As the correctness of the instruction given by the Court to the jury rests mainly on the evidence produced in the cause, it is deemed expedient to set it forth fully. The plaintiffs called one Taylor, who swore that they were engaged in fishing on Chowan river; that at the time of the alleged injury, the seine was partially drawn into the shore, the farthest part of it extending about four hundred yards outwards into the river; that the river was unobstructed for three fourths of a mile beyond the outer part of the seine, over any part of which outside space, the defendant could have gone with his boat. At this juncture, the hands at the fishery were engaged in taking in the seine, the two ends upon the shore being two hundred yards apart: A flat boat was stationed at the upper end, the bow of which was on the shore, and the stern towards the stream, at which they were taking in the seine and placing it in the boat, While thus situated, the steamboat of the defendant came *Page 300 
down the river, and when first seen, was on a course which would have taken her outside of the seine, had she kept it. As she approached, however, she turned suddenly in towards the shore, at the signal of a passenger standing on the beach near the fishing boat; she continued this course until within fifteen feet of the shore, when she came up against the stern of the fishing boat (upon which, in the meantime, the passenger had gone;) she was there entangled in the seine, which was lying and floating in the water near the stern of the boat, and it was thus torn. The steamer having taken the passenger from the flat, passed over the seine, tearing it apart, and proceeded down the river, passing over the lower part of the seine, and tearing that also: This was in the day time, the wind blowing freshly down the river. The plaintiff, Lewis, was upon the beach at the time, and after the boat's getting within the seine, expostulated with those in charge of the boat against running over his seine, to which he received no reply. The boat made no stop after taking in the passenger, and no effort to back up the river after she became entangled with the seine. This was not a public landing place, but passengers occasionally got on and off the steamboat at this point, always using for such purposes a small boat, while the steamboat stopped out in the river.
Another witness for the plaintiffs, Mr. Smith, stated that the fishery could be seen from a point two or three miles up the river; that the steamboat floated sidewise down against the stern of the fishing boat; that she got into the seine with her right wheel, but witness did not see how she got entangled. Her bows were at this time pointing out towards the stream, and if she had gone straight-forward, she would not have gone over the lower part of the seine, but she turned down the stream and went into it. Her stern was on the shore. No steam was put on as she drifted against the seine. Both these witnesses said they had no knowledge of the management of steamboats.
The defendant introduced a witness, Mr. Halsey, who said, that he had commanded vessels for thirty years, and was in *Page 301 
charge of this steamboat at the time referred to, and had been so for several years, as agent for the defendant; that it was a regular passenger boat on the river, which was a large navigable stream. He stated that he had previously agreed with the passenger spoken of, to take him in the boat at this place. As he approached the fishery of the plaintiffs, he saw the signal of the passenger on the beach near by, and turned to take him off. On approaching the shore, he called to the passenger to get on board the fishing boat, and informed him at the same time that their small boat was lost. His aim was to run the bows of the steamboat up against the flat, but he did not intend to injure the plaintiff's seine. He saw the hands taking in the seine, but thought he could run the steamboat up against the flat without injuring it. He succeeded in stopping the steamboat just as she touched the flat, having shut off the steam just before, but immediately the seine became entangled with the wheels of his boat: He sent a hand down to disengage it: As soon as the passenger was taken in, he passed down over the seine carefully, sinking the lower corkline below the water, so as to enable the boat to pass without injury. He could not then go any other way, as the stern was towards shore, and her bows down the stream. The witness was not aware that the seine was injured. When he first became entangled with the seine, he attempted to back the boat off by using poles, and reversing her engines, but could not do so, as the stern was against the shore. He used all the skill and care possible to avoid doing an injury. The witness had frequently taken passengers on and put them off at this place, with the knowledge of the plaintiff, Lewis, and without objection from him, and did so at other points on the river, commonly using a small boat for the purpose. The wind was blowing freshly down the river.
Witnesses Freeman and Irvine, for the defendant, stated that care was used to keep off of the seine, and that the boat could not have been managed otherwise, after she ran up to the shore.
The Chowan river was admitted to be a navigable stream. *Page 302 
Defendant's counsel objected to a recovery upon the grounds:
1st. That in the exercise of the paramount right of navigation, the defendant had liberty to run over any part of the river, without being liable for any other than wilful injuries, and that, in the present case, his purpose was to take in a passenger in the usual course of his employment, and that the injury complained of was accidental and unavoidable.
2d. The defendant's counsel asked the Court to instruct the jury, that as the Chowan river was a navigable stream, the defendant had a right to the use of all its waters, from shore to shore, for the purposes of navigation, and the conveying of passengers, and that where a passenger presented himself on the shore, the defendant had a right to go in with his boat to take him on board, and if he did this bona fide, and in the exercise of the right all proper care and skill had been used in the management of the boat, the defendant was not liable.
The Court charged the jury, that all navigable waters, above the ordinary ebbing and flowing of the tides, are public highways: upon which steamboats and all other water craft are free to pass and repass at all times, without hindrance by riparian owners or others. In the same waters, however, riparian owners, and, in some instances, others, have a right to fish with nets, seines, and other contrivances, of a like nature. The two rights of navigation and fishing in these waters exist at the same time, but the right of navigation is ever held paramount to the right of fishing — the common good requiring that the private interest should yield to the public convenience, whenever the two may conflict. But when it can be done without such conflict, both rights may be exercised in the same waters, at the same time, and persons using the paramount privilege must respect the interests of those exercising the lesser, to the extent to which the law recognises the existence of the privilege itself.
Both rights being thus recognized, neither is left without protection against mere wanton and unnecessary injuries. All persons are protected, though they be in the commission of a wrong; *Page 303 
but where the law acknowledges a right, it extends still greater protection to those exercising it. Persons engaged in navigating public rivers, like the Chowan, are liable for other than mere wanton and unnecessary injuries to the seines and nets of those engaged in fishing in the same waters; they are required to use reasonable care and diligence to avoid injuries of this character; they are not confined to the strictest degree of care, but only such as is ordinary and reasonable. And if the evidence offered on the part of the plaintiffs, as to the circumstances under which the injury complained of was inflicted, be true, then there was such negligence upon the part of the agent, in charge of the steamboat, as would render the defendant liable to the action of the plaintiffs.
And, if the version given by the defendant's witness, Halsey, was true, and the other facts as to the condition of the seine, and the open space on the other side, as spoken of by the plaintiffs' witnesses, were true, then the defendant would be liable, and the plaintiffs should recover; for, it was unnecessary for any useful purpose of navigation to have turned out of his course, and gone up to the fishing flat, where, according to his statement, even good and skilful management of the boat could not then avoid the injury. There was negligence in going to the flat, when such a result was most likely to follow.
The counsel for the defendant asked the Court to charge the jury, that if they believed, from the evidence, that the commander of the boat saw the seine, and carried the steamer intentionally and wilfully to the stern of the fishing flat, when the injury happened, then, as every man is held to intend the consequences of his own act, the defendant could not be liable, as it was a wilful trespass on the part of the servant, the commander of the boat, and that trespass against the servant, and not case against the employer, would be the proper remedy.
The Court refused to give these instructions, remarking that the evidence of the defendant's own witnesses showed that the action on the case would lie. Verdict for plaintiffs. *Page 304 
Rule for a venire de novo for wrong instructions given to the jury, c. Rule discharged; judgment and appeal.
The case presents a very interesting question, and we have given to it much consideration, with a view, if possible, to "mark the line" dividing the right of navigation, and the right of fishing. Both rights exist, not as private rights, depending on grant or riparian ownership, but as rights in common, to which one citizen is entitled as well as another. The right of navigation is paramount, because it is of most importance to the "public weal." The difficulty is, to lay down a rule by which to allow the free and full exercise of this paramount right, in such a way as to leave room for the other right to stand on, except as a mere matter of sufferance.
Unless the line can be marked distinctly, it is better to have no line at all; otherwise, there will be an infinity of law suits growing out of these conflicting interests.
We have concluded, that the line made by law is a very broad one, and that, in fact, the fishing interest has no ground to stand on, except as a matter of sufferance.
The ownership of the land lying near the water-course confers no right; for that stops at high-water mark, leaving the water and the beach, between high and low-water mark, for a public highway. The State has not, as the sovereign, made any special grant of the right to fish to the plaintiffs, so they stand like any other citizen, and have a right to catch as many fish as they can, like the rest of us. COLLINS v. BENBURY, 5 Ired., 119. Note the distinction. In the cases cited from the English books, the right of fishing is specially granted by the crown. *Page 307 
It is argued, that it never would do to require a steamboat, or other vessel, to stop or go out of the way, in order to avoid a set-net or seine, because, if obliged to stop for one, they may be obliged to stop for a thousand, and there would be no getting along.
But, it is contended, that the defendant had no right to come to the bank, at the time and place he did, and is therefore bound to pay all of the damage that resulted from the fact of his doing so. Thus, the question is, had the defendant a right to come to the bank at the time and place he did? He says that, by reason of the paramount right of navigation, he had a right to come to the bank at any time, and at any place, when and where there was a bona fide necessity for him to do so, in the pursuit of his vocation; that, in this particular instance, without any wantonness or malice, he did only so much as his business required him to do, and took pains to avoid doing any unnecessary damage to the plaintiff.
The fact that the defendant acted without wantonness or malice, is conceded, and there is no allegation that he did any unnecessary damage; but the gravamen of the plaintiffs is, that no skill or care could have brought the boat in without doing damage to the seine, and therefore, it was in contemplation of law, negligence and wrongful, for the defendant to attempt to do it. So we come fairly to the issue; must a steamboat stop until a seine can be drawn out of the way, or has the boat a right to go to the bank at any time, at any place, when there is a "bona fide" necessity for doing so, to take in freight or passengers, doing no unnecessary damage?
We have come to the conclusion, that this is the only line that can be established. A boat on a navigable stream has a right to "take her course", and to go to the bank, when and where it is necessary to do so — doing no unnecessary damage, and acting without wantonness or malice; and is not obliged to stop or go out of her way, or wait upon the movements of those who are managing a seine or net, which they are permitted to use by *Page 308 
the sufferance of the sovereign, and not as a right conferred by grant. This is the only line that can be established, plain enough for practical purposes. There must be no wantonness or malice — no unnecessary damage, but a bona fide exercise of the paramount right of navigation.
There is error. Venire de novo.